584 S.E.2d 143

The **STATE**, Respondent,

v.

Dedric **THOMASON**, Appellant.

No. 3666.

Court of Appeals of South Carolina.

Heard April 9, 2003.

Decided July 21, 2003.

Chief Appellate Defender Daniel T. Stacey, of SC Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Duane Dykes White, of Anderson, for Respondent.

HOWARD, J.:

Dedric Thomason pled guilty to two counts of resisting arrest in violation of South Carolina Code Annotated section 16–9–320 (Supp.2001). During sentencing, Thomason moved to withdraw his guilty pleas, and the circuit court denied his motion. On appeal, Thomason contends the circuit court erred by refusing his request to withdraw his pleas because the state failed to abide by a plea agreement. Additionally, Thomason argues we should reverse his sentences because they resulted from the court's bias and prejudice. We affirm.

## FACTS

A Greenville County grand jury returned a two-count indictment against Thomason. Each count charged him with resisting arrest involving an assault on a law enforcement officer in violation of section 16–9–320(B). Thomason pled guilty to one count, and on the remaining count, he pled to the lesser-included offense of resisting arrest under section 16–9–320(A). Neither Thomason nor the state advised the circuit court of any plea negotiations or agreement. The state recommended probation.

The circuit court questioned Thomason to determine if he understood the nature of the offenses, the possible punishments, and the rights he would be waiving. Thomason confirmed no promises had been made to induce his guilty pleas. During this questioning, neither the state nor Thomason's attorney alerted the circuit court to any plea agreement.

Having determined Thomason's pleas were knowingly, intelligently, and voluntarily entered, the circuit court accepted them, stating: "All right. I'll accept his plea if the State gives me a substantial factual basis for it." The state then presented a limited summary of the facts and recommended probation. Thomason did not argue the summary was legally insufficient to support the charges.

Hearing the recommendation of probation, the circuit court immediately advised Thomason, his attorney, and the state, the circuit court was not bound by any recommendation and would be the sole judge of the sentences to be imposed. Thomason's attorney acknowledged this fact and did not mention a plea agreement to the circuit court.

Thomason's attorney then gave a factual presentation in mitigation of the offenses, shifting blame for the incident to the arresting law enforcement officers. Hearing this, the circuit court asked if the solicitor notified the officers regarding the pleas and the recommendation of probation. When the solicitor could not confirm the officers had been notified, the circuit court recessed the hearing and summoned the officers to appear.[1]

Thomason then moved to withdraw his guilty pleas, arguing, for the first time, he had a plea agreement with the state limiting the state's factual presentation. Thomason claimed allowing the officers to present controverted facts would violate the plea agreement to his prejudice because he could not contest their version of events in a guilty plea as he could through cross-examination in a trial.

The circuit court refused to allow Thomason to withdraw his pleas and resumed the sentencing when one of the two officers appeared. As Thomason feared, the officer presented facts adverse to Thomason and confirmed he had not been notified of the guilty pleas or the solicitor's proposed recommendation of probation.

Following the officer's presentation, Thomason again moved to withdraw his pleas. The circuit court denied the motion, opining Thomason's attorney and the state had misled the

---

1. The solicitor who presented the case was substituting for the solicitor assigned to handle the case.

circuit court in the factual presentation. The circuit court rejected the recommendation of probation and sentenced Thomason to one-year imprisonment for resisting arrest under subsection (A) and six years imprisonment for resisting arrest with assault under subsection (B). Thomason appeals.

## ISSUES PRESENTED

I.  Was Thomason entitled to withdraw his guilty pleas as a matter of right before the circuit court imposed sentence?

II.  Did the circuit court abuse its discretion in refusing to allow Thomason to withdraw his guilty pleas based on the state's breach of a plea agreement?

III.  Was Thomason's sentence a result of the circuit court's bias and prejudice resulting from anger at Thomason's counsel?

## LAW/ANALYSIS

I.  Was Thomason entitled to withdraw his guilty pleas as a matter of right before the circuit court imposed sentence?

Thomason argues he was entitled to withdraw his guilty pleas as a matter of right. We disagree.

"All that is required before a plea can be accepted is that the defendant understand the nature and crucial elements of the charges, the consequences of the plea, and the constitutional rights he is waiving, and that the record reflect a factual basis for the plea." *Rollison v. State*, 346 S.C. 506, 511, 552 S.E.2d 290, 292 (2001).

A guilty plea may not be accepted unless it is voluntarily and understandingly made. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Lambert*, 266 S.C. 574, 577–78, 225 S.E.2d 340, 341–42 (1976). However, once a defendant enters a guilty plea, whether to allow withdrawal of the plea is left to the sound discretion of the circuit court. *State v. Riddle*, 278 S.C. 148, 150, 292 S.E.2d 795, 796 (1982).

Thomason acknowledged he was guilty of the charges and was voluntarily pleading guilty. The circuit court questioned him to determine whether the pleas were knowingly, voluntarily, and intelligently entered. At that stage, the circuit court stated it accepted the pleas pending presentation of the facts by the state. Thomason did not then move to withdraw his pleas. Next, the state presented facts legally sufficient to support the charges and recommended probation. Again, Thomason did not move to withdraw the pleas and raised no objection to the sufficiency of the factual presentation given by the state. Thomason then began to discuss sentencing issues with the court. Under the authority of *State v. Cantrell*, 250 S.C. 376, 158 S.E.2d 189 (1967), and *State v. Barton*, 325 S.C. 522, 481 S.E.2d 439 (Ct.App.1997), we conclude the circuit court accepted Thomason's guilty pleas and whether to allow withdrawal rested within the sound discretion of the circuit court.

In *Cantrell*, a case factually similar to this case, the defendant entered guilty pleas, which the circuit court accepted. During the preliminary stages of sentencing, the circuit court began to review the defendant's prior statement to police. In the statement, the defendant admitted multiple prior offenses. Based on this information, the circuit court indicated it was not inclined to give a probationary sentence, whereupon the defendant moved to withdraw his plea. 250 S.C. at 378, 158 S.E.2d at 190–91.

▮▮▮▮ Upholding the trial court's decision to deny the motion to withdraw the pleas, the supreme court noted a guilty plea "is a confession of guilt made in a formal manner and is equivalent to and as binding as a conviction after a trial on the merits. It has the same effect in law as a verdict of guilt and authorizes the imposition of the punishment prescribed by law." *Cantrell*, 250 S.C. at 379, 158 S.E.2d at 191. Furthermore, "[a]n accused is not permitted to speculate on the supposed clemency of the judge and enter a plea of guilty with the right to retract it if he finds that his expectation was not realized." *Id.* at 380, 158 S.E.2d at 191–92. Thus, under those circumstances, our supreme court ruled the decision to deny withdrawal of the plea rested within the sound discretion of the circuit court.

In *Barton,* the defendant entered his guilty pleas, and the circuit court began to impose sentence. Before the circuit court could complete the publication of its sentence, Barton interrupted. In a later motion for reconsideration, Barton claimed he interrupted to withdraw his guilty pleas. Under those circumstances, this Court ruled the guilty pleas were entered, and the proceeding entered the sentencing phase at the time of Barton's interruption. Therefore, refusal to allow withdrawal of the accepted pleas was limited to review for abuse of discretion. *Id.* at 525–28, 481 S.E.2d at 441–42.

Based on this record, we conclude the guilty pleas in this case were clearly accepted by the circuit court. Thus, once the state completed its recitation of the facts, the hearing entered the sentencing phase, and no further ruling was required to accept the guilty pleas. *See Boykin,* 395 U.S. at 242, 89 S.Ct. 1709; *Rollison,* 346 S.C. at 511, 552 S.E.2d at 292; *Cantrell,* 250 S.C. at 380, 158 S.E.2d at 191; *Barton,* 325 S.C. at 531, 481 S.E.2d at 443–44. Therefore, whether to allow Thomason to withdraw his guilty pleas was a matter resting within the sound discretion of the circuit court, and Thomason could not withdraw his pleas as a matter of right. *See Riddle,* 278 S.C. at 150, 292 S.E.2d at 796.

## II. Did the circuit court abuse its discretion in refusing to allow Thomason to withdraw his guilty pleas based on the state's breach of a plea agreement?

Thomason argues he was entitled to withdraw his guilty pleas because the state breached the terms of a plea agreement. Thomason contends the plea agreement required the state to notify the officers and ensure their accord with the state's factual presentation and proposed disposition. We disagree.

Generally, the circuit court may conduct an inquiry broad in scope, largely unlimited either as to the kind of information it may consider or the source from which the information may come, to assist it in determining the sentence to be imposed. *State v. Gulledge,* 326 S.C. 220, 228, 487 S.E.2d 590, 594 (1997); *Cantrell,* 250 S.C. at 380, 158 S.E.2d at 191 (holding when sentencing a convicted defendant, a circuit court exercises a wide discretion regarding the sources and

types of evidence it may use to assist it in determining the kind and extent of punishment to be imposed). As noted in *Gulledge*, "[i]n a sentencing proceeding, evidentiary rules are inapplicable[,]" and the court may consider inadmissible evidence, so long as the information is relevant, reliable and trustworthy. 326 S.C. at 228, 487 S.E.2d at 594.

Furthermore, the circuit court's inquiry into notification of the victims is appropriate, as is providing an ópportunity for the victims to be heard during sentencing. *See* S.C. Const. art. I, § 24.

Thomason argues the state agreed to limit the factual presentation to those statements contained in the solicitor's factual presentation. Thus, Thomason contends allowing the officer to present his version of the events violated the plea agreement and prejudiced him by limiting his ability to cross-examine the witnesses. However, no such plea agreement was divulged to the court prior to the acceptance of the guilty pleas.

Our supreme court has recognized a plea agreement rests on contractual principles. *State v. Gates,* 299 S.C. 92, 94–95, 382 S.E.2d 886–87 (1989); *see also Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor ... such promise must be fulfilled."); *Alston v. State,* 38 Md.App. 611, 379 A.2d 754, 757 (Md.1978) ("When the State's Attorney has given his word in the form of a plea bargain and that bargain is accepted by the trial court, it behooves the State's Attorney to make every reasonable effort to correct any deviation from the bargain when the deviation is called to his attention.").

■ However, plea agreements will only be reviewed when they are clearly delineated on the record. In *Thrift,* our supreme court ruled:

Today, the complexity of cases dictates that a reliable record exist containing the specific terms of any plea agreement. We hold, therefore, that effective with this decision, all plea agreements must be on the record and must recite the scope, offenses, and individuals involved in the agreement. We also hold that prospectively for all plea agreements entered after the filing of this opinion, we will limit

our review of a plea agreement only to those terms which are fully set forth in the record.... [Furthermore,] neither the State nor the defendant will be able to enforce plea agreement terms which do not appear on the record before the trial judge who accepts the plea.

312 S.C. at 295–96, 440 S.E.2d at 348–49.

In this case, there was no written plea agreement in the record, and neither party identified an oral plea agreement meeting the requirements of *Thrift* prior to the circuit court's acceptance of Thomason's pleas. Only after the circuit court accepted the pleas and undertook its duty to examine all of the pertinent facts necessary to fashion an appropriate sentence did Thomason assert, for the first time, there was a plea agreement limiting the factual presentation.

Under these circumstances, we conclude Thomason's assertion was untimely and did not comply with *Thrift*. Consequently, we cannot review the alleged plea agreement.

In so holding, we acknowledge our supreme court has placed an affirmative, shared duty on circuit court judges and counsel to ensure the scope of plea agreements is sufficiently entered on the record. *Thrift*, 312 S.C. at 296, 440 S.E.2d at 349. However, in this case, neither the state nor Thomason alerted the circuit court to any plea agreement specifically limiting the factual presentation given by the state. Under these circumstances, the circuit court fulfilled its duty under *Thrift* by inquiring, prior to the acceptance of the pleas, whether any promises had been made to Thomason in exchange for his guilty pleas.

Furthermore, Thomason's argument that he was prejudiced by his inability to cross-examine the witnesses is unavailing because he waived his right to cross-examination of the witnesses when he knowingly, voluntarily, and intelligently entered his guilty pleas. *See Gulledge*, 326 S.C. at 228, 487 S.E.2d at 594. As noted in *Gulledge*, the only constraint on the information which may be considered by the circuit court at sentencing is that it be relevant and have sufficient indicia of reliability. *Id.*

Having failed to present an enforceable plea agreement, Thomason argues no other basis for his claim the circuit court abused its discretion. Consequently, we hold there was no abuse.

### III. Was Thomason's sentence a result of the court's bias and prejudice resulting from anger at Thomason's counsel?

Thomason argues the circuit court was biased and prejudiced against him because the circuit court was angry with his attorney.

During sentencing, Thomason's attorney twice assured the circuit court the solicitor had communicated with the arresting officers about the guilty pleas. Thomason's attorney then clarified he believed the solicitor had contacted the officers as a part of plea negotiations. However, when the arresting officer later appeared and denied any knowledge of the guilty pleas or the sentence recommendation, the circuit court opined Thomason's attorney and the solicitor misled it.

On appeal, Thomason argues this exchange, coupled with the lengthy sentence of incarceration, proves the severity of the sentences resulted from the circuit court's bias and prejudice. We conclude this argument is not preserved for appeal.

"Generally, where bias and prejudice of a trial judge is claimed, the issue must be raised when the facts first become known and, in any event, before the matter is submitted for decision." *Butler v. Sea Pines Plantation Co.,* 282 S.C. 113, 122–123, 317 S.E.2d 464, 470 (Ct.App.1984). For an appellate court to review an issue, a contemporaneous objection at the trial level is required. *State v. Hoffman,* 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994). "[A]n objection should be sufficiently specific to bring into focus the precise nature of the alleged error so it can be reasonably understood by the trial judge." *State v. Prioleau,* 345 S.C. 404, 411, 548 S.E.2d 213, 216 (2001). Moreover, a party cannot argue one theory at trial and a different theory on appeal. *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989).

Thomason made no motion for recusal. Further, he neither objected to the sentence nor moved the circuit court to alter or amend the judgment. Thus, this argument is not preserved for appellate review. *See Hoffman,* 312 S.C. at 393, 440 S.E.2d at 873; *Prioleau,* 345 S.C. at 411, 548 S.E.2d at 216; *Bailey,* 298 S.C. at 5, 377 S.E.2d at 584; *see also State v. Johnston,* 333 S.C. 459, 462, 510 S.E.2d 423, 424 (1999) (hold-

ing an objection to sentence exceeding the maximum allowable by law does not raise a question of subject matter jurisdiction and cannot be raised for the first time on appeal).

We recognize there is authority relaxing this rule where the tone and tenor of the trial judge's remarks are such that any objection would have been futile. *State v. Pace*, 316 S.C. 71, 74, 447 S.E.2d 186, 187 (1994). However, the record in this case does not support such a conclusion.

The circuit court explained its policy to listen to the facts before sentencing and emphasized sentencing was exclusively within the purview of the circuit court. The circuit court gave Thomason an opportunity to respond to the officer's statements and made sure the additional facts had been given to Thomason during discovery.

Contrary to Thomason's assertion that there is no other explanation for the harsher sentences imposed, the facts revealed by the law enforcement officer were more egregious than the limited version of events conveyed by the solicitor.[2] Further, the sentences imposed by the circuit court were within the range allowed by law.

Throughout the sentencing proceeding, the circuit court remained focused on the facts pertinent to sentencing, responding with an appropriate and well-reasoned ruling to each argument raised by counsel. The record simply does not reasonably lend itself to the conclusion a timely objection would have been futile. Thus, notwithstanding the circuit court's disappointment in the handling of the matter by counsel, we conclude this issue was not raised to the circuit court and is not preserved for review.

## CONCLUSION

Based on the foregoing, Thomason's sentences are

**AFFIRMED.**

STILWELL, J., and STROM, Acting Judge, concur.

---

**2.** The officer's version revealed he and his partner were called to the scene because Thomason was shooting a firearm outside a residence. The officer testified Thomason repeatedly ordered his pit bull dog to attack the officers as they tried to arrest him. The dog did attack one of the two officers, diverting his attention from the arrest. The remaining officer fell to the ground with Thomason on top of him.